FILED

2021 Apr-23  AM 10:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN LABRAKE, *et al.*, | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 7:20-cv-01430-LSC |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF OPINION

Plaintiffs Kevin LaBrake, April LaBrake, and Megan Townsend (collectively, "Plaintiffs") bring this action against Defendants State Farm Mutual Automobile Insurance Company ("State Farm") and Metropolitan Casualty Insurance Company ("Metropolitan") (collectively, "Defendants"). Plaintiffs assert state law claims against Defendants for breach of contract, bad faith, and for underinsured motorist coverage. Before the Court are Defendants' Motions to Dismiss (docs. 13 & 14). The motions are fully briefed and are ripe for review. For the reasons stated below, the motions are due to be granted in part and denied in part.

## I.  BACKGROUND[1]

Plaintiffs are citizens of New York. Defendants are corporations. State Farm is incorporated in Illinois and has its principal place of business in Illinois. Metropolitan is incorporated in Rhode Island and has its principal place of business in Rhode Island.[2] Defendants conduct business in Alabama, where they also have registered agents to receive service of process. Plaintiffs have insurance policies with Defendants, which were purchased and executed in New York.

On July 7, 2017, Plaintiffs were involved in an automobile accident. Lasondra C. Gordon Spencer ("Spencer") collided with the front of Plaintiffs' vehicle. Plaintiffs suffered severe and permanent injuries, as well as emotional harm. On January 16, 2019, Plaintiffs filed suit against Spencer in Alabama state court, alleging negligence and/or wantonness. On February 13, 2019, Spencer's insurance carrier offered a settlement of $50,000 to Plaintiffs. Plaintiffs asked Defendants for permission to accept the settlement offer, stating that this was the maximum amount

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiffs' Complaint, and the Court makes no ruling on their veracity.

[2] Plaintiffs did not properly allege the citizenship of Defendants in their Complaint. (*See* doc. 1.) Plaintiffs submitted a Notice remedying this defect, so the Court relies upon Plaintiffs' Notice for the citizenship of Defendants. (*See* doc. 25.)

of Spencer's insurance coverage. State Farm allowed Plaintiffs to accept the settlement.

After accepting the settlement, Plaintiffs sought payment from State Farm and Metropolitan, as they contend that the settlement was insufficient to cover their expenses from the accident. Plaintiffs had underinsured motorist coverage with both companies. Metropolitan denied coverage outright, while Plaintiffs entered into negotiations with State Farm to settle their underinsured motorist claims, which were unsuccessful.

Plaintiffs filed their Complaint against Defendants on September 25, 2020, seeking compensatory and punitive damages for breach of contract, bad faith, and underinsured motorist coverage. (Doc. 1.) Metropolitan filed a Motion to Dismiss on December 17, 2020. (Doc. 13.) State Farm filed a Motion to Dismiss on December 29, 2020. (Doc. 14.) Plaintiffs filed a response in opposition to Defendants' motions. (Doc. 17.) Defendants filed replies in support of their motions. (Docs. 20 & 21.)

II.    STANDARD OF REVIEW

A.    12(b)(2)

In a Rule 12(b)(2) motion to dismiss, the plaintiff generally "bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810

(11th Cir. 2010) (quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The court must treat facts alleged in the complaint as true if they are not controverted by affidavits submitted by the defendant. *Id.* Further, "where a defendant who purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction," the *defendant* must then "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### B.   12(b)(6)

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another

way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1296 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (internal quotation marks omitted). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

"In general, if it considers materials outside of the complaint, a district court must convert the motion to dismiss into a summary judgment motion." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). However, a "district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *See id.* (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Defendants attached their respective insurance policies to their motions, and Plaintiffs referred to these policies in their Complaint. As the Court finds the insurance policies central to Plaintiffs' claims and their authenticity is not in dispute, the Court may take the insurance policies into consideration in this Opinion without converting Defendants' motions into ones for summary judgment. *See id.*

## III.   DISCUSSION

Defendants seek to dismiss Plaintiffs' Complaint, arguing that the Court lacks personal jurisdiction over Defendants. Defendants also argue that, under New York law, Plaintiffs have failed to state a claim upon which relief may be granted. Alternatively, Defendants request that the Court transfer this case to the Northern District of New York as that is a more appropriate venue. The Court will address each argument.

### A.    Personal Jurisdiction

A federal district court "may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels*, *Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Personal jurisdiction is generally a two-step inquiry, as the court must consider whether exercising personal jurisdiction is consistent with both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). However, for federal courts in Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)); *see also Ex parte Edgetech I.G., Inc.*, 159 So. 3d 629, 633 (Ala. 2014). Thus, this Court need only consider the limits of the Due Process Clause. *Mut. Serv. Ins. Co.*, 358 F.3d at 1319.

To subject a nonresident defendant to personal jurisdiction, due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—but both are based on the defendant's contacts with the forum state. *See, e.g.*, *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).

### 1.    General Personal Jurisdiction

Plaintiffs assert that the Court has general personal jurisdiction over Defendants. General personal jurisdiction exists over defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The contacts must be so great that *any* suit in the forum state is justified, even on matters unrelated to the defendant's contacts with the forum state.   *See Int'l Shoe Co.*, 326 U.S. at 318. A corporate defendant is subject to general personal jurisdiction in forums where it has its place of incorporation and principal place of business. *See Daimler*, 571 U.S. at 137. "'[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler*, 571 U.S. at 139 n.19); *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448–449 (1952).

Defendants are not "at home" in Alabama, thus the Court cannot exercise general personal jurisdiction over either State Farm or Metropolitan. State Farm is a corporation with its place of incorporation and its principal place of business in Illinois; therefore, State Farm is at home in Illinois. Metropolitan is a corporation with its place of incorporation and its principal place of business in Rhode Island; therefore, Metropolitan is at home in Rhode Island. Defendants do not have such extensive operations in Alabama as to render them the exceptional case that would subject them to general personal jurisdiction in this forum. Accordingly, the Court lacks general personal jurisdiction over State Farm and Metropolitan.

2.    *Specific Personal Jurisdiction*

Plaintiffs also assert that the Court has specific personal jurisdiction over Defendants. The inquiry as to whether a court may assert specific personal jurisdiction over a nonresident defendant focuses on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  For a court to exercise specific personal jurisdiction, the suit must "arise out of or relate to" the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused

'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Further, the defendant's contacts must create a "substantial connection" with the forum state. *Walden*, 571 U.S. at 284.

Specific personal jurisdiction does not require a large volume of contacts with the forum state, as even a single purposeful contact can give rise to personal jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) ("The Court has made clear . . . that '[s]o long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.'" (quoting *Burger King*, 471 U.S. at 475 n.18)). First, to have constitutionally minimum contacts, a defendant's contacts with the forum must (1) "be related to the plaintiff's cause of action or have given rise to it;" (2) "involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;'" and (3) be of a nature "that the defendant should reasonably anticipate being haled into court" in the forum. *Sloss*, 488 F.3d at 925 (quoting *McGow v McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005), *abrogated on state law grounds as stated in Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1258–59 (11th Cir. 2010)).

If a defendant has sufficient contacts to subject it to the forum state's courts, then the court must also consider whether the exercise of specific personal

jurisdiction would "offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). This analysis requires weighing various factors: the burden placed upon the defendant, the interests of the forum state in deciding the dispute, the plaintiff's interest in litigating in that forum, the interests of the interstate judicial system in an efficient resolution of disputes, and the interests of fundamental social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (per curiam).

### a.    Minimum Contacts

Defendants have sufficient minimum contacts to subject it to the forum state's courts. The Eleventh Circuit has held that the inclusion of a state "within [the] covered territory for [underinsured motorist] coverage" provides related contacts in a forum for a plaintiff's "cause of action for damages covered by the policy." *McGow*, 412 F.3d at 1214, *abrogated on state law grounds as stated in Diamond Crystal Brands, Inc.*, 593 F.3d at 1258–59. Here, the accident which gave rise to Plaintiffs' claims occurred in Alabama. Additionally, Defendants' insurance policies provide for

nationwide underinsured motorist coverage.[3] Thus, Defendants' contacts with Alabama are sufficiently related to Plaintiffs' cause of action for this Court to be able to exercise specific personal jurisdiction over Defendants.

Also, the fact that Defendants provide nationwide underinsured motorist coverage satisfies the second requirement for exercising specific personal jurisdiction—that Defendants have purposefully availed themselves of conducting business in the forum. *See id.* at 1214–15.

Finally, it is reasonably foreseeable that Defendants could be haled into court in the forum state because their insurance policies provide for nationwide coverage. Thus, it is foreseeable that Defendants "could be called upon to litigate and to pay in [Alabama] or in any other state within the covered territory." *Id.* at 1215. Accordingly, Defendants have sufficient minimum contacts with Alabama to subject it to the jurisdiction of this Court.

> b.   *Traditional Notions of Fair Play and Substantial Justice*

Defendants do not argue that this Court's exercise of specific personal jurisdiction would offend traditional notions of fair play and substantial justice. Even

---

[3]     Both insurance policies have the same language regarding covered territory for underinsured motorist coverage, stating that the coverage "applies only to accidents that occur . . . in the United States, its territories or possessions, or Canada." (Docs. 13–1 at 33–34, 14–1 at 18.)

so, the Court determines that, weighing the various factors, exercising specific personal jurisdiction over Defendants comports with due process.

The burden placed on Defendants by litigating Plaintiffs' claims in Alabama rather than New York is minimal. Defendants conduct business in the state; have registered agents to receive service of process; and litigate similar claims in Alabama. Furthermore, Defendants have provided nothing to suggest that litigating in Alabama would be burdensome; therefore, this factor does not weigh against personal jurisdiction.

Additionally, the forum state's interest in deciding this dispute does not weigh against exercising personal jurisdiction over Defendants. It is true that Plaintiffs are not residents of Alabama. A forum state's interest in deciding a dispute generally tends to decline when there is no in-state resident involved in the litigation. *See Asahi*, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). And, as discussed below, Alabama law does not apply to Plaintiffs' claims, but rather New York law applies. However, Plaintiffs were driving in Alabama; injured in Alabama; and received medical care in Alabama. Thus, the Court cannot say that the forum state has little interest in resolving this dispute.

Plaintiffs' interest in litigating in the forum weighs in favor of exercising specific personal jurisdiction over Defendants. Although Plaintiffs do not reside in Alabama, they chose Alabama as their forum; therefore, this factor weighs in favor of the Court exercising specific personal jurisdiction over Defendants.

Finally, no needs of the interstate judicial system or fundamental social policies are undermined by exercising jurisdiction over Defendants. The overall weight of these factors supports exercising specific personal jurisdiction over Defendants. As Defendants have minimum contacts with the forum and exercising personal jurisdiction over them would not offend traditional notions of fair play and substantial justice, this Court may exercise specific personal jurisdiction over Defendants. Accordingly, this Court will not dismiss this action for failure of personal jurisdiction.

## B.    Choice of Law and Failure to State a Claim

Defendants argue that New York law governs Plaintiffs' claims, and that under New York law, Plaintiffs have failed to state a claim upon which relief may be granted. A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008) (per curiam) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Alabama law follows the traditional conflict-of-law

principles of *lex loci contractus* and *lex loci delicti.*" *Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 956 (Ala. 2013) (quoting *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009)). Under these principles, a contract is governed by the law of the place where the contract is made, unless "the parties have specified a particular sovereign's law to govern." *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). Tort claims are governed according to the law of the state where the injury occurred. *See Precision Gear*, 135 So. 3d at 956.

   1. *Breach of Contract and Underinsured Motorist Claims—Counts I, III*

    a. *Choice of Law*

Plaintiffs argue that Alabama law should apply to their breach of contract and underinsured motorist claims because (1) Alabama does not follow the doctrine of *lex loci contractus*; and (2) the application of New York law would be contrary to Alabama's public policy.

As to their first argument, Plaintiffs assert that the Alabama Constitution, as amended in 2014, abrogated prior choice of law doctrines, including *lex loci contractus*. Plaintiffs cite to Article 1, Section 13.50(c), which provides that "a

court . . . shall not apply or enforce a foreign law[4] if doing so would violate any state law or a right guaranteed by the Constitution of this state or of the United States." Ala. Const. art. 1 § 13.50(c). Plaintiffs also state that "no Alabama court shall be required by any contract or other obligation entered into by a person or entity to apply or enforce any foreign law." *Id.* § 13.50(g). However, Plaintiffs' conclusion that Alabama abandoned choice of law doctrines by the adoption of this amendment to the Alabama Constitution is contrary to recent caselaw. After the adoption of this amendment, Alabama courts have continued to apply traditional choice of law doctrines. *See, e.g.*, *Protective Life Ins. Co. v. Apex Parks Grp., LLC*, 2020 WL 5582229, at *9 (Ala. Sept. 18, 2020) (applying *lex loci contractus* in the absence of a choice of law provision to determine that California law applied to a contract dispute, as California was where the contract was issued and delivered to the insured); *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018) (applying *lex loci contractus* to a contract dispute in the absence of a choice of law provision). Accordingly, this Court must apply the doctrine *lex loci contractus* in the absence of a choice of law provision.

---

[4]     Foreign law is defined as "any law, rule, or legal code, or system established, used, or applied in a jurisdiction outside of the states or territories of the United States, or which exist as a separate body of law, legal code, or system adopted or used anywhere by any people, group, or culture different from the Constitution and laws of the United States or the State of Alabama." Ala. Const. art. 1 § 13.50(b)(5).

Here, State Farm's insurance contract contains a choice of law provision stating that the laws of New York govern contract disputes. Thus, the Court will apply New York law to Plaintiffs' contract claims against State Farm absent a public policy exception. *See Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991) ("While parties normally are allowed to choose another state's laws to govern an agreement, where application of that other state's laws would be contrary to Alabama policy, the parties' choice of law will not be given effect and Alabama law will govern the agreement.").

There are no public policy exceptions that support this Court abandoning the choice of law provision in State Farm's policy. Plaintiffs again rely upon Article 1, Section 13.50 of the Alabama Constitution as evidence of the prevailing public policy in the state, which Plaintiffs claim demonstrates a policy of disfavoring foreign law. Plaintiffs assert that foreign law refers not only to international law, but also to the law of other states. When read in the context of the entire section, it is clear that Section 13.50 is intended to address international law, and not the laws of other states. *See, e.g.*, Ala. Const. art. 1 § 13.50(b)(6) ("Alabama has a favorable business climate and has attracted may international businesses. While Alabama business persons and companies may decide to use foreign law in foreign courts, the public policy of Alabama is to prohibit anyone from requiring Alabama courts to apply and

enforce foreign laws."); Christopher Randolph, *Limitations on the Application of Foreign Law, Enforcement of Forum-Selection Clauses, and Application of Forum Non Conveniens After Amendment 884*, 40 Ala. Ass'n Just. J., Fall 2019 at 48–49. As international law is not at issue, Article 1, Section 13.50 of the Alabama Constitution is inapplicable to the instant case. Plaintiffs have not identified any other fundamental public policy that would require the application of the law of Alabama instead of New York. As such, the choice of law provision in State Farm's policy is enforceable, and New York law applies to Plaintiffs' claims for breach of contract and underinsured motorist coverage.

While Metropolitan does not have a choice of law provision in its insurance policy, New York law also applies to Plaintiffs' claims against Metropolitan. Applying the doctrine *lex loci contractus*, the Court looks to where the contract was formed. It is undisputed that Plaintiffs' insurance contract was formed in New York. And, for the reasons discussed above, Plaintiffs have provided no fundamental public policy in Alabama that would be violated by the application of New York law to their claims. As the insurance policy was entered into in New York, New York law applies to Plaintiffs' breach of contract and underinsured motorist claims against Metropolitan.

*b.*      *12(b)(6)*

Having determined that New York law applies to Plaintiffs' breach of contract and underinsured motorist claims, the Court turns to Defendants' arguments that Plaintiffs have failed to state any claim upon which relief may be granted. In order to state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Plaintiffs have stated a claim for breach of contract against Defendants. State Farm and Metropolitan argue that Plaintiffs did not allege facts to support the elements of breach of contract under New York law.  Defendants construe Plaintiffs' Complaint too narrowly. Plaintiffs allege that they had contracts with Defendants; that they requested permission to settle their underlying claim with Spencer, which is a prerequisite for pursuing an underinsured motorist claim; that they complied with all requests from Defendants; and that Defendants failed to pay their underinsured motorist claims, resulting in damages. This is sufficient for Plaintiffs to state a claim at this stage for breach of contract against Defendants. Accordingly, Defendants' motions are due to be denied in part.

Insofar as Plaintiffs seek punitive damages for their breach of contract claim, Defendants' motions are due to be granted as New York does not recognize punitive damages for ordinary breach of contract claims. *See Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 613 (N.Y. 1994) ("Punitive damages are not recoverable for an ordinary breach of contract" unless "the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort . . . and is sufficiently egregious . . . to warrant the additional imposition of exemplary damages."); *Alexander v. Geico Ins. Co.*, 826 N.Y.S.2d 777, 778 (N.Y. App. Div. 2006) (affirming the dismissal of the plaintiff's request for punitive damages, finding that the plaintiff failed to allege facts such that the "defendant's conduct constitutes a tort independent of the contract [and] that the defendant, in dealing with the general public, engaged in egregious or fraudulent conduct"). As Plaintiffs have not alleged any facts that would support a claim for punitive damages, their demand for punitive damages as a result of the alleged breach of contract claims is due to be dismissed.

As to Plaintiffs' claim for underinsured motorist coverage, Defendants argue that this is duplicative of Plaintiffs' breach of contract claim and thus it should be dismissed. Plaintiffs do not contest that, under New York law, they have failed to state a claim for underinsured motorist coverage separate from their breach of

contract claim. Plaintiffs' claims for breach of contract and underinsured motorist coverage rely upon the same facts, charge Defendants with the same conduct, and seek the same remedies—damages for failure to pay Plaintiffs' underinsured motorist claims. As both claims are essentially breach of contract claims for Defendants' alleged failure to pay underinsured motorist benefits, Plaintiffs' claim for underinsured motorist coverage is duplicative. *See Gutierrez v. Gov't Emps. Ins. Co.*, 25 N.Y.S.3d 625, 627–28 (N.Y. App. Div. 2016) (finding that claims for underinsured motorist benefits and breach of contract for failure to pay underinsured motorist benefits both sounded in contract and thus were duplicative of each other). Accordingly, this claim is also due to be dismissed.

### 2.   *Bad Faith Claim—Count II*

#### a.   *Choice of Law*

Plaintiffs also argue that Alabama law should apply to their bad faith claim, which sounds in tort. *See, e.g.*, *Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975–76 (Ala. 1998). Thus, the substantive law this Court must apply is determined by the doctrine *lex loci delicti*, which looks to the law of the state where the injury occurred. *Precision Gear*, 135 So. 3d at 956. "[I]t is not the site of the alleged tortious act that is relevant, but the site of the injury, or the site of the event that created the right to sue." *Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1347 (M.D. Ala. 1998); *see also Ex*

*parte U.S. Bank Nat'l Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014). Where a plaintiff's damages are primarily financial in nature, "the 'injury' for choice of law purposes occurs in the jurisdiction where those economic damages are felt." *Doug's Coin & Jewelry, Inc. v. Am.'s Value Channel, Inc.*, No. 2:12-cv-1095-MHH, 2015 WL 3632228, at *8 (N.D. Ala. June 10, 2015) (citing *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

Plaintiffs assert that (1) Alabama does not follow the doctrine of *lex loci delicti*; and (2) applying *lex loci delicti*, the last event necessary to make Defendants liable for the alleged tort occurred in Alabama, not New York.

Plaintiffs rely upon Article 1, Section 13.50 of the Alabama Constitution to support their contention that Alabama abandoned traditional choice of law doctrines, including *lex loci delicti*. As discussed above, this contention is not supported by Alabama caselaw; therefore, this Court will apply the doctrine of *lex loci delicti* to determine the proper substantive law for Plaintiffs' bad faith claim.

As to their second argument, Plaintiffs assert that the proper test to apply is not where the financial injury is felt, but rather where the last action occurred that is necessary for Defendants to be liable for the alleged tort. Plaintiffs assert that the last action necessary for Defendants to be liable occurred in Alabama, which is where Defendants sent correspondence to Plaintiffs' counsel, including claim denials.

Plaintiffs' claims for bad faith stem from Defendants' alleged failure to pay and investigate their underinsured motorist claims, claims for which the harm suffered is primarily financial in nature. The Alabama Supreme Court has cautioned against utilizing a broad test where the place of financial harm is always determinative as to where a plaintiff's alleged injury occurred; however, this test has not been limited exclusively to fraud cases, as Plaintiffs allege. *See Ex parte U.S. Bank Ass'n*, 148 So. 3d at 1072 (declining to extend the "feel the financial harm" test to claims for malicious prosecution). If this Court were to apply the test as Plaintiffs suggest, wherever Plaintiffs retained counsel would govern the substantive law of their tort claims. Under their reasoning, if Plaintiffs had retained counsel in California to litigate their claims in Alabama, California law would apply to their bad faith claims because that is where Defendants would have sent their correspondence, including claim denials. That result is incongruous with Alabama courts' application of *lex loci delicti*. Given the nature of Plaintiffs' claims, the Court sees no reason to deviate from applying the law of the state in which the financial injury occurred, which is New York.  Accordingly, New York law applies to Plaintiffs' claims for bad faith, absent a public policy exception.

Plaintiffs rely upon Article I, Section 13.50 of the Alabama Constitution for the proposition that applying New York law would be contrary to Alabama public

policy, thus arguing that Alabama law should apply. For the reasons discussed above, Section 13.50 does not create a new public policy exception that makes it the public policy of the state to refuse to apply the laws of other states within the United States. As Plaintiffs provide no other public policy exception that would alter this Court's application of *lex loci delicti*, New York law applies to Plaintiffs' claims for bad faith.

### b.   12(b)(6)

Having determined that New York law applies to Plaintiffs' claims for bad faith, the Court turns to Defendants' argument that Plaintiffs have failed to state a claim upon which relief may be granted. New York does not recognize a "separate cause of action . . . in tort for an insured's alleged bad faith in failing to perform its contractual obligations." *Alexander*, 826 N.Y.S.2d at 778; *see also New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767–68 (N.Y. 1995) ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie."). In order to state a claim for bad faith, a plaintiff must allege a "relationship or duty . . . separate from [the] contractual obligation." *Alexander*, 826 N.Y.S.2d at 778.

Plaintiffs have not alleged any facts suggesting a relationship or duty separate from Defendants' contractual obligations to pay underinsured motorist benefits that would support a claim for the tort of bad faith. Furthermore, Plaintiffs do not contest that they cannot state a claim under New York law. Accordingly, Defendants'

motion is due to be granted in part and Plaintiffs' bad faith claims asserted as Count II are due to be dismissed.

## C. Transfer of Venue

The circumstances under which a court may transfer a case to a different venue are detailed in 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision to grant a transfer of district or division is at the "broad discretion" of the trial court. *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988). However, "federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). That choice "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B 1981)). Therefore, a party seeking a transfer of venue typically bears the burden of showing that a transfer to the suggested forum is more convenient or is in the interest of justice. *Ricoh Corp.*, 870 F.2d at 573.

In deciding whether to grant a motion to transfer, the court engages in a two-step analysis. *See C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005). The Court first analyzes whether the action could have been brought in the proposed transferee district or division. *Id.*; *see also* 28 U.S.C. § 1404(a) (explaining that the court may transfer an action "to any other district or division where it might have been brought"). Next, the Court considers whether the convenience of the parties and the interests of justice would be furthered by the action's transfer. *C.M.B. Foods, Inc.*, 396 F. Supp. 2d at 1286; *see also* 28 U.S.C. § 1404(a). As part of its determination, the Court should consider and weigh the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

With respect to the first step in the analysis, Plaintiffs could have brought this action in the Northern District of New York. New York is where Plaintiffs reside; entered into their insurance contracts with Defendants; and communicated with Defendants concerning their policies. Furthermore, Plaintiffs and Defendants agree

that this action could have been brought in the Northern District of New York. As such, venue is also proper in the Northern District of New York.

The Court must now determine whether other considerations clearly outweigh Plaintiffs' choice of forum such that the convenience of the parties and interest of justice would be furthered by transferring this action to the Northern District of New York. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100–01 (11th Cir. 2004) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). For the reasons stated below, Defendants have not met their burden of showing that a transfer to the Northern District of New York is warranted at this time.

With respect to the convenience of the witnesses and the location of relevant documents, these factors do not weigh heavily in favor of transfer. Plaintiffs state that they received some medical care related to the automobile accident in Tuscaloosa County; therefore, there are some records and witnesses located in the Northern District of Alabama that may be relevant to Plaintiffs claims. While documents relating to the denial of underinsured motorist benefits may not be located in Alabama, Defendants have given no indication that they are located in New York. Even if they are located in New York, it is presumably not a difficult task

to locate and transfer such documents to Alabama. As such, these factors are neutral, and do not weigh in favor of transfer.

As for the convenience of the parties and the plaintiff's choice of forum, these factors do not weigh in favor of transfer. Plaintiffs reside in New York; however, they chose to litigate in Alabama. While it may be more convenient for Plaintiffs to litigate in New York, this Court must give deference to their choice of forum. Defendants conduct business in Alabama, and are subject to suit in the state, thus litigating in Alabama is not inconvenient. Thus, these factors do not weigh in favor of transfer.

Concerning the locus of operative facts, this factor does not weigh in favor of transfer. This Court is persuaded by other district courts that have found this factor to be neutral when there is "no single locus of the operative facts." *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1166 (S.D. Fla. 2017) (quoting *Bell v. Rosen*, No. CV214-127, 2015 WL 5595806, at *11 (S.D. Ga. Sept. 22, 2015)). "In determining the locus of operative facts, the court must look at 'the site of [the] events from which the claim arises.'" *Nat'l Tr. Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016) (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003)). Here the accident which gave rise to Plaintiffs' claims occurred in Alabama. Plaintiffs allege their underinsured

motorist claims were denied by State Farm in Georgia and by Metropolitan in New York. Thus, there is no single locus of operative facts; therefore, this factor is neutral.

The parties did not address whether this Court would be able to compel all witnesses to attend trial in the Northern District of Alabama. Thus, this factor does not weigh in favor of transfer.

With respect to the relative means of the parties, Defendants do not raise this as an argument weighing in favor of transfer. The Court recognizes that Defendants are corporations that conduct business in Alabama, and presumably have the means by which to litigate in the forum. Plaintiffs chose to bring suit in this forum, and they state that there is no disproportionate impact placed on them by litigating in Alabama. As such, this factor does not weigh in favor of transfer.

The forum's familiarity with the governing law does not weigh in favor of transfer. While the Court has determined that New York law applies to Plaintiffs' claims, this Court is competent to apply law from other states. As such, this factor is neutral.

The Eleventh Circuit has directed that the plaintiff's choice of forum should govern in the absence of significant contrary considerations. *See Robinson*, 74 F.3d at 260. For the reasons stated above, there are no factors that weigh heavily in favor of transfer at this time, and the totality of the circumstances does not demonstrate that

the interests of justice are better served by a transfer of this case from the Northern District of Alabama to the Northern District of New York at this time. As such, Defendants' motions are due to be denied in part.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' bad faith and underinsured motorist claims are due to be dismissed. Plaintiffs' breach of contract claims against Defendants remain pending; however, Plaintiffs' demand for punitive damages associated with their breach of contract claims is due to be dismissed. While Defendants' Motions to Transfer Venue are due to be denied at this time, Defendants may move to transfer venue after this action proceeds through discovery. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on April 23, 2021.

L. Scott Coogler
United States District Judge

202892